UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YVONNE MARIA KHAN,

   Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

Case No. 18-cv-02868-JSC

**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 17

   Plaintiff Yvonne Marie Khan seeks social security benefits for a combination of physical and mental impairments, including: degenerative disc disease, fibromyalgia, knee and shoulder problems, hand and wrist condition, bone spurs, and depression. (*See* Administrative Record ("AR") 112, 237.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her benefits claim. (Dkt. No. 1.)[1] Before the Court are Plaintiff's and Defendant's motions for summary judgment.[2] (Dkt. Nos. 16 & 17.) Because the Administrative Law Judge's ("ALJ's") failure to construe the medical and lay evidence in light of Plaintiff's diagnosed fibromyalgia constitutes reversible error, the Court GRANTS Plaintiff's motion and DENIES Defendant's cross motion, and REMANDS for further proceedings.

## LEGAL STANDARD

   A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

---

[1] Record citations outside of the administrative record are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8 & 9.)

First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). As explained by the Ninth Circuit, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted); *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). However, "a decision supported by substantial evidence will still be set aside if

2

the ALJ did not apply proper legal standards." *Gutierrez*, 740 F.3d at 523. A court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

**PROCEDURAL HISTORY**

In August 2014, Plaintiff filed an initial claim for Social Security Disability Insurance Benefits under Title II of the Social Security Act, (AR 197), alleging disability beginning in October 2013, (AR 81). Plaintiff completed her application in October 2014. (AR 219-267.) Her application was denied initially and on reconsideration. (AR 95, 131.) Plaintiff then requested a hearing before an ALJ. (AR 148.) On February 27, 2017, ALJ Brenton L. Rogozen held a hearing during which both Plaintiff and vocational expert ("VE") Judith L. Najarian testified. (AR 42-67.)

**I.     The ALJ's Findings**

On April 10, 2017, the ALJ issued a written determination denying Plaintiff's application, finding that Plaintiff was not disabled within the meaning of the Social Security Act based on the testimony and evidence and using Social Security Administration's five-step sequential evaluation process for determining disability. (AR 17-32.)

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since October 1, 2013, the alleged onset date. (AR 19.) At step two, the ALJ determined that the medical evidence indicated that Plaintiff's degenerative disc disease of the cervical and lumbosacral spine, obstructive sleep apnea, migraine headaches, fibromyalgia, depressive disorder, and personality disorder constitute "severe impairments." (*Id.*) The ALJ characterized those impairments as "severe" because "they bring about symptoms causing a limitation or restriction having more than a minimal effect on the claimant's ability to do basic work activities." (AR 20.)

At the third step, the ALJ concluded that Plaintiff "does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AR 20 (citing 20 C.F.R.

3

404.1520(d), 404.1525 and 404.1526).) In reaching that conclusion, the ALJ considered listing 1.04 based on Plaintiff's spine impairment, and listings 12.04 and 12.08 for Plaintiff's depressive disorder and personality disorder, respectively. (*Id.*) The ALJ noted that "[a]lthough there is no specific listing pertaining to fibromyalgia," the ALJ considered that impairment's impact, "including any potential risks, limitations, restrictions, and comorbidities." (*Id.*)

At step four, the ALJ considered Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff retained the RFC to perform unskilled "light work" with the following limitations:

> She can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday, with normal breaks. The claimant is limited to performance of unskilled work involving simple, repetitive tasks.

(AR 21.)

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision." (AR 24.) In making that determination, the ALJ noted "inconsistencies" between Plaintiff's alleged symptomatology "and her self-reported daily activities," as well as "the relevant medical evidence of record, including diagnostic imaging showing only mild degenerative changes of the cervical and lumbar spine, a series of largely unremarkable physical examinations, and a dearth of probative health records in evidence." (AR 23.)

As for the medical opinion evidence, the ALJ afforded "little weight" to the opinions of treating Physician Assistant Muriel Rose, finding "the extreme functional limitations set forth by Ms. Rose to be inconsistent with the relevant medical evidence of record." (AR 26-28.) Further, the ALJ noted that "Ms. Rose is a physician assistant who is not 'an acceptable medical source,' as defined in 20 C.F.R. 404.1513." (AR 27-28.) The ALJ next considered the opinion of consultative examining psychologist Dr. Kim Goldman, affording it "some, but not significant or great weight," because Dr. Goldman's finding of "mild difficulties" in Plaintiff's "ability to

4

maintain social functioning and respond appropriately coworkers, supervisors, and the public" was "inconsistent with both a dearth of probative mental health records in evidence and the claimant's self-reported activities of daily living." (AR 27.) The ALJ then considered the opinion of licensed marriage and family therapist Alice Mestemacher, LMFT, who opined that Plaintiff "would be extremely limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, as well as perform at a consistent pace with a standard number and length of rest periods." (*Id.*) The ALJ afforded Ms. Mestemacher's opinion "little weight," noting that she "is a marriage and family therapist who is not an 'acceptable medical source,'" and citing the same inconsistencies found regarding Dr. Goldman's opinion. (AR 28.)

The ALJ next addressed the opinion of consultative orthopedic examiner Dr. Lara Salamacha, who evaluated Plaintiff on October 14, 2016. (*Id.*) The ALJ afforded Dr. Salamacha's opinion "some, but not significant or great, weight" because "the postural limitations set forth by [Dr. Salamacha]" were "inconsistent with the relevant medical evidence of record." (AR 28-29.) The ALJ afforded the same weight to the opinions of non-examining consulting physicians Dr. A. Nasrabadi and Dr. A. Dipsia for the same reason—the postural limitations were "inconsistent with the relevant evidence of record." (AR 29.) The ALJ then considered the opinions of non-examining consulting psychologists Dr. Covey and Dr. Dalton and afforded them "some, but not significant or great, weight" because some of the "mild" mental limitations set forth in their opinions were inconsistent with "both a dearth of probative mental health records in evidence and [Plaintiff's] own self-reported activities of daily living." (AR 30.) Finally, the ALJ afforded "little weight" to Plaintiff's Global Assessment of Functioning ("GAF") scores because GAF scores are subjective, can vary 'from time to time," are "not designed for adjudicative determinations," and "may indicate problems that do not necessarily relate to a claimant's ability to hold a job." (*Id.*)

The ALJ concluded the step four analysis by finding that Plaintiff is unable to perform her past relevant work. (AR 30.) At step five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" based on her "age,

5

education, work experience, and residual functional capacity" to perform "unskilled light work." (AR 31-32.) In sum, the ALJ determined that Plaintiff was not "under a disability, as defined by the Social Security Act, from October 1, 2013, through the date of [the ALJ's] decision." (AR 32.)

## II. The Appeals Council

On April 24, 2017, Plaintiff filed a request for review of the ALJ's decision. (AR 5.) The Appeals Council denied Plaintiff's request for review on March 19, 2018, making the ALJ's decision final. (AR 1-6.)

## III. This Action

Plaintiff commenced this action for judicial review on May 16, 2018, pursuant to 42 U.S.C. § 405(g). (Dkt. No. 1.) Plaintiff then moved for summary judgment, (Dkt. No. 16), and the Commissioner filed her cross-motion, (Dkt. No. 17).

## DISCUSSION

Plaintiff asserts that remand for a new hearing and ALJ decision is warranted because the ALJ's determination of the RFC is unsupported by substantial evidence of record; specifically, the ALJ "afford[ed] little weight to the opinions of treating and examining physicians[,] particularly in light of [Plaintiff's] fibromyalgia diagnosis." (Dkt. No. 16 at 11.) Plaintiff further argues that the RFC determination conflicts with the opinion of "consulting psychologist, Tania Shertock, Ph.D" and the ALJ erred in failing to consider that opinion. (*Id.* at 24-25.) The Court addresses each argument in turn.

## I. Failure to Adequately Analyze Evidence Regarding Fibromyalgia

Plaintiff argues that the RFC is unsupported by substantial evidence because the ALJ did not afford appropriate weight to the opinions of Plaintiff's treating and examining physicians, "particularly in light of her fibromyalgia diagnosis." The Court agrees.

As the Ninth Circuit has explained:

> Fibromyalgia is a "rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke* [*v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004)]. Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep

> disturbances that can exacerbate the cycle of pain and fatigue." *Id.* at 590. What is unusual about the disease is that those suffering from it have "muscle strength, sensory functions, and reflexes [that] are normal." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting) (quoting Muhammad B. Yunus, *Fibromyalgia Syndrome: Blueprint for a Reliable Diagnosis*, Consultant, June 1996, at 1260). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Id.* (quoting Yunus, supra, at 11260). Indeed, "[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Id.* The condition is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." *Id.*

*Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017). Fibromyalgia cannot be detected by "X-rays or MRIs." *Id.* Further, the symptoms "wax and wane" and "a person may have 'bad days and good days.'" *Id.* (quoting Social Security Ruling 12-2p at *6). Where "a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider a longitudinal record whenever possible," and "the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Id.* at 656, 662 (internal quotation marks and citation omitted). Failure to do so constitutes reversible error. *Id.* at 662.

Here, there is no dispute that Plaintiff has an established diagnosis of fibromyalgia and was previously in receipt of social security disability benefits for fibromyalgia "in the '90's and early 2000s." (AR 47.) Plaintiff stopped receiving such benefits when she returned to work in 2007 or 2008, (AR 47-48), but she continued to receive treatment for fibromyalgia from her primary care physicians from Monterey Bay Family Physicians from 2007 through 2017, (AR Exs. B5F, B8F-B16F, B18F, B30F, and B34F.). Despite this substantial longitudinal record, the ALJ's decision failed to construe the medical opinion evidence—specifically, the opinion of Physician Assistant Muriel Rose—in light of Plaintiff's diagnosed fibromyalgia and reported symptoms. Further, the ALJ failed to assess Plaintiff's testimony and the third-party statements in support of her application in light of her fibromyalgia symptoms.

**A.   Medical Evidence**

      **1.   Treatment Records**

The ALJ's decision recognizes the following treatment for fibromyalgia and related symptoms:

7

> Records from Monterey Bay Family Physicians are available for the period of September 18, 2007, through November 28, 2016, and provide longitudinal documentation of treatment for fibromyalgia with comorbid migraine headaches and sleep disturbances. Treatment during this period was provided under the direction of primary care physician Robert Weber, M.D., physician assistant Muriel Rose, PA-C, primary care physician Clayton McDaniel, M.D., primary care physician Anne-Marie McDaniel, M.D., and sleep medicine specialist Tony Masri, M.D.
>
> Concurrently, between September 12, 2012, and October 11, 2016, the claimant was seen by pain management specialist Victor Li, M.D., at the PRIME Pain Medicine Institute for treatment of pain of the neck, back, and bilateral upper extremities. The claimant also saw neurologist Narindar Bhullar, M.D., with Pajaro Valley Neurology Medical Associates between February 7, 2014, and January 29, 2016, to assess the aforementioned migraine headaches.
>
> Additionally, the claimant saw a licensed acupuncturist at Five Branches University between April 9, 2015, and April 30, 2015, to address symptoms of fibromyalgia, including shoulder pain. Moreover, on October 13, 2016 and November 16, 2016, the claimant saw cardiologist Benjamin Potkin, M.D., in consultation to assess left upper extremity pain and facial numbness.

(AR 24-25 (citing Exs. B1F, B3F-B5F, B7F-B16F, B18F, B22F, B24F-B26F, B30F-B32F, and B34F).) Thus, the ALJ properly considered the longitudinal treatment record; however, as discussed below, he did not *construe* that record "in light of fibromyalgia's unique symptoms and diagnostic methods" as required. *See Revels*, 874 F.3d at 662.

### 2. Medical Opinion Evidence

In assessing an ALJ's consideration of the medical opinion evidence, courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examiner nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

An ALJ may reject the "uncontradicted opinion of a treating or examining doctor" only by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks and citation

8

omitted). And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986), superseded by statute on other grounds as recognized in *Bunnell v. Sullivan*, 912 F.2d 1149, 1154 (9th Cir. 1990). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. The opinions of non-examining physicians may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

ALJs must also "consider the opinions of medical providers who are not within the definition of 'acceptable medical sources.'" *Revels*, 874 F.3d at 655 (quoting 20 C.F.R. § 404.1527(b),(f)). Such opinions "are not entitled to the same deference" as those of doctors; however, "an ALJ may give less deference to 'other sources' only if the ALJ gives reasons germane to each witness for doing so." *Id.* An ALJ must also evaluate such opinions using "[t]he same factors used to evaluate the opinions of medical providers who are acceptable medical sources," such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record and specialization of the doctor." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

Ultimately, "[t]he ALJ must do more than offer his conclusions" when rejecting a medical opinion; instead, he "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Thus, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014). In conducting its review, the ALJ

9

must consider the entire record and cannot rely only on portions of the record while ignoring conflicting evidence. *See Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (finding error where "ALJ selectively relied on some entries in [plaintiff's] records from San Francisco General Hospital and ignored the many others that indicated continued, severe impairment.").

### 1. Physician Assistant Muriel Rose

As recognized by the ALJ, Plaintiff was seen by Ms. Rose on seven occasions between October 2013 and July 2014. (*See* AR 25-26). Ms. Rose also saw Plaintiff for fibromyalgia-related symptoms on November 22, 2013, September 10, 2014, February 18, 2015, and March 10, 2015.[3] (AR 583-587, 616, Ex. B8F.) Only two of those eleven visits did not include specific complaints related to Plaintiff's diagnosed fibromyalgia; the Court addresses the other nine below.

On October 24, 2013, Ms. Rose saw Plaintiff for a "continued flare of fibromyalgia." (AR 461, Ex. B5F.) Plaintiff reported:

> Feels that this is the worst flare in 10 years. Currently on lyrica for fibro, failed Cymbalta in the past. Never been on savella. Feels that she needs to try something, pain is unbearable and constant daily. Notes pain localized to shoulders, upper torso, bilateral hips and buttocks, legs. Painful to walk, can't sleep. Interested in trying anything that might help. [C]urrently unable to work.

(*Id.*) On November 22, 2013, Ms. Rose saw Plaintiff for "recheck on fibromyalgia," and Plaintiff reported worsening "all over body pain." (AR 646, Ex. B8F.) Ms. Rose next saw Plaintiff on December 31, 2013, for complaints of "chronic pain." (AR 644, Ex. B8F.) On February 3, 2014, Ms. Rose saw Plaintiff for complaints of chronic pain in part "due to fibromyalgia." (AR 640, Ex. B8F.) Ms. Rose next saw Plaintiff on March 17, 2014. (AR 638, Ex. B8F.) Plaintiff reported "flaring of fibromyalgia and chronic pain," with "severe pain in both shoulders." (*Id.*)

On July 17, 2014, Ms. Rose saw Plaintiff for complaints of "increased upper back and neck pain," "increased problem with right shoulder pain," and bilateral hip pain. (AR 621, Ex. B8F.) Plaintiff reported that "[s]ome days [she] can't even get out of bed." (*Id.*) Ms. Rose next

---

[3] The record contains fibromyalgia-related treatment records from Ms. Rose that post-date her opinions; however, for purposes of this section the Court addresses only those records that pre-date Ms. Rose's opinions.

10

saw Plaintiff on September 10, 2014, at which time Plaintiff reported an inability to exercise or work due to "chronic pain." (AR 616, Ex. B8F.) On February 18, 2015, Ms. Rose examined Plaintiff and noted her subjective reports of "poorly controlled" fibromyalgia, with constant pain and inability to work. (AR 587, Ex. B8F.) Ms. Rose next saw Plaintiff on March 10, 2015; Plaintiff again reported "chronic pain from fibromyalgia." (AR 583, Ex. B8F.)

Ms. Rose's September 2014 Residual Functional Capacity Questionnaire includes functional limitations that are more severe than those adopted by the ALJ. (*See* AR 364, Ex. B2F.) In pertinent part, and as summarized by the ALJ:

> [Ms. Rose] confirmed diagnoses of fibromyalgia, depression, and anxiety. Ms. Rose then opined that the claimant could lift and/or carry 10 pounds occasionally; stand and/or walk for about one hour in an eight-hour workday; and sit for about one hour in an eight-hour workday; with unscheduled breaks every hour. She asserted that the claimant could reach bilaterally for no more than 10% of an eight-hour workday. Ms. Rose stated that the claimant could perform manipulative activities bilaterally for no more than 25% of an eight-hour workday. She felt that the claimant would be absent from work more than four times per month.

(AR 26 (citing Ex. B2F).) The ALJ afforded "little weight" to Ms. Rose's opinion, stating:

> The undersigned finds the extreme functional limitations set forth by Ms. Rose to be inconsistent with the relevant medical evidence of record, including diagnostic imaging showing only mild degenerative changes of the cervical and lumbar spine and a series of largely unremarkable physical examinations. The [ALJ] also notes that Ms. Rose is a physician assistant who is not an 'acceptable medical source,' as defined in 20 CFR 404.1513.

(AR 27 (internal citations omitted).) The ALJ's rationale for assigning little weight to Ms. Rose's opinion is flawed for two reasons. First, the ALJ's reliance on "diagnostic imaging" and "largely unremarkable physical examinations" is contrary to the guidance set forth in *Revels*, which emphasized that such evidence has no bearing on fibromyalgia's effect on a plaintiff's RFC. *See* 874 F.3d at 656 (noting that fibromyalgia cannot be detected by "X-rays or MRIs" and "those suffering from it have muscle strength, sensory functions, and reflexes [that] are normal") (internal quotation marks and citation omitted). Second, in discounting Ms. Rose's opinion because she is not "an acceptable medical source," the ALJ erred in not providing "reasons germane to [Ms. Rose]" for giving her opinion "less deference" than the opinions of acceptable sources. *See id.* at

11

655 (noting that "an ALJ must consider the opinions of medical providers who are not within the definition of 'acceptable medical sources,'" and "may give less deference" to such sources "only if the ALJ gives reasons germane to each witness for doing so").

The ALJ's consideration of Ms. Rose's June 2015 Physical Assessment is similarly flawed. As summarized by the ALJ, in that report Ms. Rose:

> [R]eiterated her prior diagnoses of fibromyalgia, depression, and anxiety. Ms. Rose then opined that the claimant could lift and/or carry 20 pounds occasionally; stand and/or walk for about one hour in an eight-hour workday; and sit for about 30 minutes in an eight-hour workday; with unscheduled breaks. She asserted that the claimant could reach on the right for no more than 20% of an eight-hour workday. Ms. Rose stated that the claimant could reach on the left for no more than 60% of an eight-hour workday. She asserted that the claimant could perform manipulative activities on the right for no more than 20% of an eight-hour workday. Ms. Rose stated that the claimant could perform manipulative activities on the left for no more than 60% of an eight-hour workday. She felt that the claimant would be absent from work more than four times per month.

(AR 28 (citing Ex. B21F).) The ALJ again assigned little weight to Ms. Rose's opinion, stating:

> The undersigned finds the extreme functional limitations set forth by Ms. Rose to be inconsistent with both her previous opinion and the relevant medical evidence of record, including the aforementioned diagnostic imaging showing only mild degenerative changes of the cervical and lumbar spine and a series of largely unremarkable physical examinations. The [ALJ] again notes that Ms. Rose is a physician assistant who is not an "acceptable medical source," as defined in 20 CFR 404.1513.

(*Id.* (internal citations omitted).) Again, the ALJ erred to the extent that he discounted Ms. Rose's opinion based on objective evidence not relevant to the assessment of fibromyalgia (i.e., diagnostic imaging and "largely unremarkable physical examinations). Further, simply stating that Ms. Rose "is not an 'acceptable medical source'" is not sufficient.

### 2. Dr. Salamancha and Non-Examining State Agency Consultants

The ALJ also erred in discounting the postural limitations set forth in the opinions of consultative examiner Dr. Salamancha and the non-examining consultants Dr. A. Nasrabadi and Dr. A. Dipsai because the ALJ did not construe the opinions in light of Plaintiff's diagnosed fibromyalgia. As previously discussed, the ALJ afforded "some, but not significant or great, weight" to all three opinions because "the postural limitations set forth" in those opinions were

"inconsistent with the relevant medical evidence of record, including the aforementioned diagnostic imaging showing only mild degenerative changes of the cervical and lumbar spine and a series of largely unremarkable physical examinations." (AR 28-29 (citations omitted).) Once again, such evidence is not probative of limitations related to Plaintiff's fibromyalgia.

### B. Plaintiff's Testimony and Third-Party Statements

The ALJ similarly erred in considering Plaintiff's Function Reports and testimony, as well as the third-party statements submitted by Plaintiff's husband, her daughters and son, her sister, and her niece. In *Revels* the court found reversible error where the ALJ failed to consider the lay testimony in light of the plaintiff's fibromyalgia diagnosis; specifically:

> The ALJ stated that Revels' testimony is undercut by the lack of "objective finding" supporting her claims of severe pain. He highlighted several examinations that had mostly normal results, such as an X-ray and MRIs of Revels' neck and back, as well as the nerve conduction and velocity study of her hands. He also cited medical records showing that, at several doctor's appointments, Revels exhibited normal muscle strength, tone, and stability, as well as normal range of motion. This reasoning was similar to his reasoning for rejecting Dr. Nolan's opinion, and was similarly erroneous. As described above, the examination results cited by the ALJ are perfectly consistent with debilitating fibromyalgia. The condition is diagnosed "entirely on the basis of patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis." *Benecke*, 379 F.3d at 590.

874 F.3d at 666. Similarly here, in assessing the credibility of Plaintiff's "assertion that she is unable to work," the ALJ stated:

> [Plaintiff's assertion is] inconsistent with the relevant medical evidence of record, including diagnostic imaging showing only mild degenerative changes of the cervical and lumbar spine, a series of largely unremarkable physical examinations, and a dearth of probative mental health records in evidence. Taken as a whole, these records do not comport with the claimant's reported functional limitations.

(AR 23.) The ALJ also found "the functional limitations set forth by [Plaintiff's] family to be inconsistent with the [same] relevant medical evidence of record." (AR 24.) Again, the ALJ's citation to diagnostic imaging and "largely unremarkable physical examinations" is not probative of the Plaintiff's fibromyalgia-related symptoms and their effect on her ability to work. The ALJ's reliance on that evidence in discounting the lay testimony is thus in error.

13

\*\*\*

In sum, the ALJ's failure to properly analyze the medical opinion evidence and lay testimony in light of Plaintiff's diagnosed fibromyalgia constitutes legal error.

## II. Opinion of Dr. Shertock

Plaintiff argues that the ALJ's RFC determination conflicts with the mental limitations found in the opinion of consulting psychologist Dr. Shertock and the ALJ erred in failing to consider that opinion. Defendant counters that any error in not discussing Dr. Shertock's opinion was harmless because the RFC accounts for moderate limitations and is thus *more* restrictive than the mild limitations found by Dr. Shertock. The Court agrees.

An error is harmless if, on review of "the record as a whole," it does not "alter[ ] the outcome of the case." *Molina*, 674 F.3d at 1115 (noting that "an ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination") (internal quotation marks and citation omitted). Here, despite Plaintiff's assertion, there is no indication that Dr. Shertock's "opinion is more limiting than the ALJ's RFC." (*See* Dkt. No. 16 at 25.)

Dr. Shertock examined Plaintiff on January 4, 2014, diagnosed her with a mood disorder and posttraumatic stress disorder, and found that those conditions caused "mild impairment" in seven out of eight "work-related abilities." (*See* AR 1386 (finding mild impairment in Plaintiff's ability to carry out complex instructions, maintain concentration, maintain adequate pace, withstand stress, complete tasks, endure stress, and adapt to work-related changes).) Conversely, the ALJ found that Plaintiff's mental impairments caused "moderate limitations" in "concentrating, persisting, and maintaining pace." (AR 20, 29-30.) The ALJ's RFC determination thus limited Plaintiff "to the performance of unskilled work involving simple, repetitive tasks." (AR 21.) That determination tracks Dr. Shertock's finding that Plaintiff had no impairment in understanding, remembering, or carrying out simple instructions, (*see* AR 1386), but also reflects the ALJ's consideration of the more restrictive *moderate* limitations in concentrating, persisting, and maintaining pace, (*see* AR 20). In other words, the ALJ's failure to address Dr. Shertock's opinion was harmless because it would have no effect on the ultimate RFC determination, which was based in part on consideration of moderate, not mild mental

14

impairments. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-76 (9th Cir. 2008) (concluding that the ALJ's RFC determination limiting the plaintiff to simple, repetitive tasks adequately incorporated moderate mental limitations related to pace, "attention, concentration, and adaption").

### III. Remand or Credit-As-True

When a court vacates an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke*, 379 F.3d at 595. A remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels*, 874 F.3d at 668 (internal quotation marks and citation omitted). Plaintiff does not argue that those requirements are met here, and instead asks the Court to remand this action for further administrative proceedings. The Court agrees that further proceedings are required; specifically, the ALJ must adequately consider the medical and testimonial evidence in light of Plaintiff's fibromyalgia and reassess Plaintiff's RFC accordingly.

### CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross motion, and REMANDS for further proceedings consistent with this Order.

This Order disposes of Docket Nos. 16 & 17.

**IT IS SO ORDERED.**

Dated: June 3, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge